ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE BAYAMÓN<br><br>Apelados<br><br>v.<br><br>LOS COMPADRES CORP.; Y LUCAS HERNÁNDEZ COLÓN<br><br>Apelantes | KLAN202400762 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV04986<br><br>Sobre: Injunction Estatutario al Amparo del Art. 14.1 de la Ley 161-2009, según enmendada, Ley para la Reforma del Proceso de permisos de Puerto Rico |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de septiembre de 2024.

Comparece ante *nos*, Los Compadres Corp. (parte apelante) y nos solicita que revisemos la *Sentencia* emitida el 9 de mayo de 2024 y notificada el 10 de mayo de 2024, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Bayamón. Mediante dicho dictamen, el TPI declaró *Ha Lugar* la *Petición de Injunction Estatutario* que presentó el Municipio Autónomo de Bayamón (parte apelada).

Por los fundamentos que se exponen a continuación, *confirmamos* la *Sentencia* apelada.

**I.**

Surge del expediente ante *nos* que, el 8 de septiembre de 2023, la parte apelada presentó una *Petición de Injunction Estatutario* al amparo del Artículo 14.1 de la Ley Núm. 161 de 1 de diciembre de 2009 (23 LPRA sec. 9024), según enmendada, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico. En ajustada

Número Identificador

SEN2024_____

síntesis, la parte apelada adujo que la parte apelante o sus antecesores en derecho habían realizado trabajos de construcción consistentes de una terraza en madera sin haber obtenido el permiso de construcción. Consecuentemente, la parte apelada solicitó el cese y desista de la operación del negocio y la demolición de la estructura.

Así las cosas, el 2 de octubre de 2023, la parte apelante presentó una *Moción para Asumir Representación Legal y Desestimación*. Posteriormente, el 3 de octubre de 2023, se llevó a cabo una Vista en la cual el foro primario emitió un entredicho provisional en torno a que la operación del negocio no invadiera la acera. El 10 de noviembre de 2023, las partes presentaron una *Moción en Cumplimiento de Orden* en la cual se incluyeron estipulaciones de hechos, estipulaciones sobre la prueba y una breve exposición del derecho aplicable.

Acto seguido, el 17 de noviembre de 2023, el foro primario celebró una Vista Evidenciaría. Así, el 22 de diciembre de 2023, las partes presentaron sus correspondientes *Memorandos de Derecho*. Subsiguientemente, el 9 de mayo de 2024, el foro *a quo* emitió una *Sentencia* mediante la cual declaró *Ha Lugar* la *Petición de Injunction Estatutario* que presentó la parte apelada. Además, ordenó a la parte apelante a cesar y desistir del uso de la estructura inmediatamente y a acreditar el permiso de construcción para la estructura en un término de sesenta (60) días. Dicho dictamen fue notificado a las partes el 10 de mayo de 2024.

Oportunamente, el 27 de mayo de 2024, la parte apelante presentó una *Moción al Amparo de la Regla 43.1 de las de Procedimiento Civil sobre Determinaciones Adicionales de Hechos y Conclusiones de Derecho y Solicitud de Reconsideración Parcial.* El 7 de junio de 2024, la parte apelada presentó una *Moción en Oposición.* En vista de ello, el 10 de junio de 2024, el TPI emitió una *Resolución*

mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración que presentó la parte apelante. Dicha *Resolución* fue notificada a las partes el 11 de junio de 2024.

Insatisfecho aun, el 12 de agosto de 2024, la parte apelante presentó un recurso de *Apelación* ante este Tribunal y alegó la comisión del siguiente error:

**PRIMER ERROR:**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REVOCAR EL PERMISO DE USO DE LA TERRAZA DE MADERA MEDIANTE EL MECANISMO DEL ARTÍCULO 14.1 DE LA LEY NÚM. 161-2009, SEGÚN ENMENDADA, Y PERMITIR ATACAR COLATERALMENTE EL DICTAMEN DE LA DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OFICINA DE GERENCIA DE PERMISOS, EL CUAL ES FINAL, FIRME E INAPELABLE**.

El 20 de agosto de 2024, emitimos una *Resolución* mediante la cual le concedimos a la parte apelada un término de veinte (20) días para presentar su alegato. El 11 de septiembre de 2024, la parte apelada presentó un *Alegato de la Parte Apelada*. Contando con la comparecencia de todas las partes, procedemos a resolver.

**I.**

**A. Ley 161-2009**

La Ley Núm. 161-2009, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada (23 LPRA sec. 9011 *et seq.*) (Ley Núm. 161-2009), establece que:

> [t]odo uso, construcción, reconstrucción, alteración, demolición, traslado de edificios en Puerto Rico, instalación de facilidades, subdivisión, desarrollo, urbanización de terrenos, será previamente aprobado y autorizado por la Oficina de Gerencia, Municipios Autónomos con jerarquía de la I a la V o por un Profesional Autorizado, según aplique, en cumplimiento con las disposiciones legales aplicables. Artículo 9.12 (a) de la Ley Núm. 161-2009 (23 LPRA sec. 9019k).

Asimismo, la Regla 1.6.7 del Reglamento Núm. 9473 de 16 de junio de 2023, Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios (Reglamento Conjunto), establece que:

> [s]e prohíbe expresamente realizar actividad alguna de desarrollo o uso del terreno, en cualquier propiedad bajo la jurisdicción del Reglamento, sin que se obtengan todos los permisos, autorizaciones y certificaciones aplicables de la OGPe, la Municipios Autónomos con Jerarquía de la I a la III, el PA, el IA o las entidades gubernamentales competentes autorizadas a expedir los mismos.

Cónsono con lo anterior, el Artículo 14.1 de la Ley Núm. 161-2009 (23 LPRA sec. 9024), dispone, entre otras cosas, que, un Municipio Autónomo con Jerarquía de la I a la III que haya determinado que sus leyes y reglamentos han sido violados, podrá presentar una acción de *injunction, mandamus*, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizados los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

No obstante, lo anterior, el Artículo 9.10 de la Ley Núm. 161-2009 (23 LPRA sec. 9019i) establece, entre otras cosas, que "[s]e presume la corrección y la legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V y por los profesionales autorizados". Sin embargo, cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o

arqueológicas, la determinación final emitida y el permiso otorgado por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V o por el profesional autorizado, deberá ser revocado. Íd. Así pues, la estructura se podrá modificar, conservar o demoler, solo después de que un tribunal competente así lo determine y siguiendo con el procedimiento judicial establecido, además de cumplir con el debido proceso de ley. Íd.

**B. Permiso de Construcción**

La Sección 3.2.1.1 del Reglamento Conjunto dispone que se presentará una solicitud de Permiso de Construcción para toda obra que contemple una (1) o más de las siguientes actividades: (1) construcción; (2) reconstrucción; (3) remodelación; (4) demolición; (5) obras de urbanización; (6) restauración; (7) rehabilitación; (8) ampliación; (9) alteración. Como normal general, toda obra de construcción enlistada en la Sección 3.2.1.1 requiere la obtención de un Permiso de Construcción.

Sin embargo, la Sección 3.2.4.1 del Reglamento Conjunto enumera las obras que no se consideran obras de construcción y no requerirán un permiso de construcción, siempre y cuando no formen parte de otra obra o desarrollo mayor; entre estas se encuentran: (1) pintura de edificios o estructuras existentes; (2) sellado de techos; (3) trabajos de jardinería; (4) relleno de grietas, salideros y goteras en el edificio o estructura; (5) enlucido (empañetado) de obras de hormigón existentes; (6) instalación o cambio de losetas de piso, azulejos, cerámica o cualquier otra terminación de piso o pared; (7) instalación de acústicos y luminarias; (8) instalación, cambios o sustitución de puertas, ventanas o vitrinas; (9) instalación de equipos o su relocalización cuando no conlleven instalación de elementos estructurales, mecánicos, plomería o eléctrica; (10) instalación de equipos o elementos de cocina y baños, cuando no conlleven instalación de

elementos estructurales, mecánicos, plomería o eléctrica; (11) instalación de paredes de "*gypsum board*" y materiales similares, siempre y cuando no conlleven instalación de elementos estructurales, mecánicos, plomería o eléctrica; (12) instalación de rejas, verjas en "*cyclone fence*", "*polyvynil chloride*" (pvc), metal y materiales similares, siempre y cuando no conlleven instalación de elementos estructurales, mecánicos, plomería o eléctrica; (13) asfaltar calles, caminos o estacionamientos existentes.

Asimismo, la Sección 3.2.4.2 del Reglamento Conjunto establece, entre otras cosas, que:

a. Las siguientes obras estarán exentas de la presentación de un Permiso de Construcción siempre y cuando no formen parte de otra obra que requiera un Permiso de Construcción:
1. Toda construcción, cuya elevación no excede un (1) metro, medido desde el nivel natural del terreno, siempre y cuando no represente un riesgo estructural, no conlleve construcción o instalación de vigas, varilla, columnas, aleros, elementos arquitectónicos, estructurales, soporte, carga o sostén;
2. Verjas que se construyan conforme a las disposiciones de la Regla 8.3.2 de este Reglamento.
3. Construcción o cambio de posición de divisiones interiores siempre y cuando no se creen unidades de vivienda adicionales a las existentes en el edificio, no se afecten medios de salida, elementos estructurales o mecánicos, y no se instalen o alteren tubos principales de descarga o ventilación de los sistemas de plomerías o instalen o alteren tubos principales de sistemas de distribución eléctrica y de telecomunicaciones;
4. La sustitución de material viejo por material nuevo de la misma clase o parecido, tal como madera por madera, zinc por zinc, madera por cartón etcétera, en tabiques, techos y pisos. Esta disposición no cubre la sustitución de paredes de carga y de elementos de sostén de hormigón o de mampostería y aplica siempre y cuando no se afecten medios de salida, elementos mecánicos, y no se instalen o alteren tubos principales de descarga o ventilación de los sistemas de plomerías o instalen o alteren tubos principales de sistemas de distribución eléctrica y de telecomunicaciones;
5. Instalación de cables, fibra óptica o tuberías para telecomunicaciones en servidumbres existentes y siempre y cuando no se afecten estructuras o infraestructura existente;
6. Instalación de estructuras removibles para usos agrícolas donde existan las conexiones para la infraestructura necesaria para la operación en el predio;
7. Cambios arquitectónicos en fachadas, siempre que no se introduzcan alteraciones estructurales, como: nuevas columnas, vigas, paredes de carga o nuevos aleros.
8. Sustituciones sencillas en sistemas de plomería, distribución eléctrica o telecomunicaciones – cuando consistan en cambio o sustitución de equipo, tubos o aditamentos nuevos. Cualquier alteración en el sistema de plomería o electricidad que incluya la adición o

modificación de tubos principales de descarga o ventilación o el cambio de posición de los existentes, requiere obtener un permiso.

9. Sustituciones sencillas en rótulos y anuncios – Aquellas que consistan en la sustitución de partes removibles de un rótulo o anuncio que haya sido diseñado para que se puedan efectuar estas sustituciones o la pintura de un rótulo o anuncio instalado que sea conforme a la reglamentación vigente.

10. Aquellas obras que, por disposición de alguna ley, estén exentas de un Permiso de Construcción.

## C. Cosa juzgada

La doctrina de cosa juzgada tiene el propósito de finalizar los litigios que fueron adjudicados de forma definitiva y, de este modo, "garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Presidential v. Transcaribe*, 186 DPR 263, 273-274 (2012); *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 151 (2008). Así, esta defensa tiene el efecto de evitar que se relitiguen asuntos que fueron o que pudieron litigarse y adjudicarse en el pleito anterior. *Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004). Según ha resuelto el Tribunal Supremo de Puerto Rico, "la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". *Presidential v. Transcaribe, supra,* pág. 274.

El requisito de la identidad de cosas significa que el segundo pleito versa sobre el mismo asunto adjudicado en el primer pleito, aunque las cosas se hayan disminuido o alterado. *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 220 (1992). Es decir, existe identidad de las cosas "cuando un juez, al hacer una determinación, se expone a contradecir el derecho afirmado en una decisión anterior". *Presidential v. Transcaribe, supra,* págs. 274-275. Sobre el particular, hay que evaluar no sólo la cosa sobre la cual se origina la controversia, sino también el planteamiento jurídico que se genera en torno a ella", pág. 275.

En cuanto al requisito de identidad de las causas, existe cuando los hechos y fundamentos de las peticiones son idénticos en lo que afecta la cuestión planteada. Íd. En otras palabras, al determinar si existe identidad de causas debemos analizar si ambas reclamaciones se basan en la misma transacción o núcleo de hechos. Íd. Por otro lado, este requisito "exige que la parte demandante acumule en un pleito todas las posibles teorías legales en virtud de las cuales podría tener derecho a un remedio y que surjan de los mismos hechos transaccionales". *Martínez Díaz v. E.L.A.*, 182 DPR 580, 586 (2011). Lo anterior, ya que el efecto de cosa juzgada aplica no solamente a las reclamaciones alegadas en la demanda, sino también a todas aquellas que pudieron acumularse.

"Aun estando presentes los componentes necesarios para que la doctrina de cosa juzgada surta efecto, la referida figura legal no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso*". Beníquez et al. v. Vargas et al,* 184 DPR 210, 224 (2012). "[L]a sentencia anterior es concluyente en cuanto a aquellas materias que de hecho se suscitaron y verdaderamente o por necesidad se litigaron y adjudicaron, pero no es concluyente en cuanto a aquellas materias que pudieron ser pero que no fueron litigadas y adjudicadas en la acción anterior." *Beníquez et al. v. Vargas et al., supra,* págs. 225-226.

Así pues, la doctrina de cosa juzgada es lo ya resuelto por tribunal competente, lo cual tiene el propósito de impartir finalidad a los dictámenes judiciales. *Casco Sales v. Mun. de Barranquitas*, 172 DPR 825, 833 (2007). Sin embargo, no procede aplicar de forma inflexible la doctrina de cosa juzgada cuando hacerlo derrotaría los fines de la justicia, especialmente si hay envueltas consideraciones

de orden público. *Parrilla v. Rodríguez, supra,* pág. 270; *Pérez v. Bauzá,* 83 DPR 220 (1961).

De otro lado, nuestro máximo Foro ha reconocido otra modalidad de cosa juzgada, conocida como la figura jurídica de impedimento colateral por sentencia. *P.R. Wire Prod. v. C. Crespo & Assoc., supra*; *A & P Gen. Contractors v. Asoc. Caná,* 110 DPR 753 (1981). La misma surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final. *MAPFRE et al v. ELA,* 209 DPR 910 (2022); *P.R. Wire Prod. v. C. Crespo & Assoc., supra.* Por lo tanto, tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas.

Así pues, el impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *P.R. Wire Prod. v. C. Crespo & Assoc., supra.* No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas. Íd. Esto es, que la razón de pedir plasmada en la demanda sea la misma en ambos litigios.

Al igual que la doctrina de cosa juzgada, el propósito de la figura de impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *P.R. Wire Prod. v. C. Crespo & Assoc., supra.*

**III.**

Mediante el primer señalamiento de error, la parte apelante esbozó que erró el TPI al revocar el permiso de uso de la terraza de madera mediante el mecanismo del Artículo 14.1 de la Ley Núm. 161-2009, *supra,* y permitir atacar colateralmente el dictamen de la

División de Revisiones Administrativas de la Oficina de Gerencia de Permisos (OGPe), el cual es final, firme e inapelable.

En la *Sentencia* apelada, el foro primario determinó que las obras realizadas para estabilizar la terraza de madera en el predio, a causa de un impacto de automóvil y la consiguiente rehabilitación de la terraza de madera resultando en la estructura, es una obra que no se encuentra exenta de un permiso de construcción. Así, sostuvo que de la evidencia presentada no surge que la estructura o la terraza de madera que fue estabilizada contara con un permiso de construcción. Añadió que, el caso 2021-358576-PU-068316 y su consecuente revisión ante la División de Revisiones Administrativas de la OGPe en el caso 2021-358576-SDR-005668, trataba sobre la conversión de un Permiso de Uso a un Permiso Unico; por lo cual, en dicho trámite lo único que se estaba evaluando o se debía evaluar, era la conversión de un Permiso de Uso existente a un Permiso Unico y no así la existencia de un permiso de construcción.

Finalmente, enunció que el impacto que sufrió la terraza de madera en el predio y su consecuente reconstrucción, rehabilitación y estabilización, fue posterior al caso 2021-2358576-SDR-005668.

Según surge del derecho que antecede, toda construcción será previamente aprobada y/o autorizada por la OGPe o un Municipio Autónomo con Jerarquía de la I a la V o por un Profesional Autorizado, según aplique. Artículo 9.12 (a) de la Ley Núm. 161-2009, *supra.* Cónsono con esto, la Regla 1.6.7 del Reglamento Conjunto prohíbe expresamente realizar actividad alguna de desarrollo o uso del terreno, en cualquier propiedad bajo la jurisdicción del Reglamento, sin que se obtengan todos los permisos, autorizaciones y certificaciones aplicables.

Por lo tanto, cuando un Municipio Autónomo con Jerarquía de la I a la V determine que sus leyes y reglamentos han sido violados, podrá presentar un *injunction* para solicitar, entre otras, la paralización de una obra iniciada sin contar con las autorizaciones

y permisos correspondientes y/o la paralización de un uso no autorizado y la demolición de obras construidas que no cuenten con permisos de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. Artículo 14.1 de la Ley Núm. 161-2009, *supra.*

Según surge del expediente ante *nos*, la parte apelada presentó ante el TPI una *Petición de Injunction Estatutario* al amparo del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, para que se le ordenara a la parte apelante a cesar y desistir inmediatamente del uso de la terraza de madera y, además, para que la estructura fuera demolida y devolver lo edificado en el predio a su estado original. Dicha *Petición de Injunction Estatutario,* fue correctamente presentada por la parte apelada, pues este es el remedio adecuado en ley a ser utilizado en aquellas situaciones en que un Municipio Autónomo haya determinado que sus leyes y reglamentos han sido violados.

Cabe destacar que, el caso 2021-358576-PU-068316 y su consecuente revisión ante la División de Remedios Administrativos de la OGPe en el caso 2021-358576-SDR-005668, trataba sobre la conversión de un Permiso de Uso a un Permiso Unico. Es decir, en ninguno de esos casos se evaluó la existencia de un permiso de construcción para la terraza.[1] Sin embargo, a través de una *Pre – Consulta* realizada por la parte apelante en el caso 2021-58576-PCE-016048 y su correspondiente, *Contestación a la Consulta*, la apelante advino en conocimiento que las obras a realizar en la terraza requerían un Permiso de Construcción. Esto, pues según determinó la parte apelada el accidente "ocasionó la inestabilidad estructural de la misma, estos elementos estructurales deben ser

---

[1] Además, de que la *Resolución* de la División de Remedios Administrativos de la OGPe fue emitida seis (6) meses antes de que ocurriera el accidente que dio pie a la reconstrucción de la terraza. Por lo que, no procede el planteamiento de ataque colateral del dictamen de la División de Remedios Administrativos de la OGPe, pues se trata de dos asuntos distintos.

corregidos y diseñados por un Ingeniero o Arquitecto. En adición no muestra evidencia de que la mencionada estructura se hizo con Permiso de Construcción".

Así pues, tal y como resolvió el foro primario, la estructura es una obra que no se encuentra exenta de un permiso de construcción. Por lo cual, ante la inexistencia de un permiso de construcción, procedía aplicar los postulados del Artículo 14.1 de la Ley Núm. 161-2009, *supra*, para darle cumplimiento a la ley. Así, coincidimos con el foro *a quo* de que toda construcción en nuestra jurisdicción debe contar con un permiso de construcción, máxime en aquellos casos donde la estructura representa un riesgo a la salud o a la seguridad.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones